# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**CHRISTOPHER SKARZYNSKI,**
       **Plaintiff,**

   v.                                                     Case No. 10-C-0229

**MILWAUKEE COUNTY, et al.,**
       **Defendants.**

## DECISION AND ORDER

Plaintiff Christopher Skarzynski brings this action to recover unemployment benefits seized by the Milwaukee County Department of Child Support Enforcement (the "Department"). He also seeks an injunction requiring the Department to provide persons aggrieved by its decisions with an evidentiary hearing and a right to judicial review. Before me now is Skarzynski's motion for partial summary judgment on his claim for injunctive relief and a motion by the Chief Judge of the Milwaukee County Circuit Court, whom Skarzynski has named as a defendant, to dismiss the complaint insofar as it applies to him.

## I. BACKGROUND

On December 20, 2007, a Milwaukee County family court found that Skarzynski was the father of a minor child and entered an order requiring him to pay child support in the amount of $64 per month. Under Wisconsin law, this order operated as an assignment of Skarzynski's income to Wisconsin's child-support payment system, referred to by the acronym KIDS. The KIDS computer system is programmed (it is not clear by whom, but presumably some state official) to allocate money among court cases according to information input by county child support agencies. In Milwaukee County, this agency is

the Department. Essentially, the KIDS system captures a child-support payor's income and distributes the income to various payees in the state according to an algorithm specifying the priority of the payor's obligations.

Pursuant to standard procedure, once the family court entered the support order in Skarzynski's case, the Department made an entry in the KIDS system indicating that Skarzynski owed $64 per month. During the time period relevant to this case, Skarzynski was unemployed and received unemployment benefits. Because KIDS is programmed to interact with the state's unemployment-insurance administration system, it was able to, and did, deduct the $64 per month directly from Skarzynski's unemployment benefits.

During the course of the paternity proceedings that resulted in the support order, the court appointed a guardian ad litem for the child. Following the entry of the support order, the guardian ad litem filed an affidavit with the court seeking a fee for his services. This affidavit was printed on a standard form that, at the time, was routinely used in Milwaukee County in family court cases. The bottom half of the affidavit contained a preprinted, fill-in-the-blank-style court order approving the request for fees. In Skarzynski's case, the judge filled out and signed the order. The judge awarded the guardian ad litem a fee of $1,008, determined that the parents could not afford to pay this amount, and ordered Milwaukee County to pay the fee. However, the order specified that the parents were responsible for reimbursing the County for the full amount of the fee, and in a space for handwritten comments the judge wrote "both parties shall repay Milwaukee County as they are able." (Roulette Aff. Ex. 8.) Neither Skarzynski nor his attorney was provided with a copy of either the guardian ad litem's affidavit or the family court's fee order. Apparently, it was standard

2

practice in family court at the time to determine and assign responsibility for guardian ad litem fees on an ex parte basis.

Although the court's fee order did not elaborate on what it meant for the parents to reimburse the County "as they are able," when the Department got a hold of the order it made an entry in the KIDS system that resulted in a total of $160.48 being deducted from Skarzynski's unemployment benefits and paid to Milwaukee County for reimbursement of guardian ad litem fees.[1] Skarzynski thought that these deductions were improper, and his attorney contacted the Department on three different occasions to complain. Exactly how Skarzynski's attorney contacted the Department and what happened thereafter is not revealed by the record. We don't know if the attorney wrote a letter or if the "contact" was made by phone.[2] We also don't know what the Department said in response to the complaint. All that the record reveals about Skarzynski's interaction with the Department is what plaintiff states in his proposed findings of fact:

> The Milwaukee County Office of Child Support was contacted by Skarzynski's attorney on three occasions to resolve a complaint that Mr. Skarzynski's unemployment compensation was taken improperly in August of 2008, in an improper amount (greater than $96.00) and applied to an improper purpose to reimburse Milwaukee for its payment of guardian ad litem fees. At no time was counsel informed that any additional procedure was available to resolve the dispute.

(Pl.'s Prop. Findings of Fact ¶ 23.)

---

[1]Specifically, KIDS deducted $56.48 on August 13, 2008, $98.00 on August 18, 2008, and $6.00 on September 29, 2008.

[2]During oral argument, Skarzynski's attorney stated that another attorney from his office wrote a letter to the Department. However, no such letter is in the record. The only letter from counsel's office in the record pertains to a different client and has nothing to do with the payment of guardian ad litem fees.

On February 10, 2008, plaintiff commenced this lawsuit by filing a complaint in Milwaukee County Circuit Court against Milwaukee County, the Department, the Director of the Department in her official capacity, and the Chief Judge of the Milwaukee County Circuit Court, Jeffrey Kremers, in his official capacity. The defendants removed the action to this court. The complaint includes three claims for relief. The first is a claim for deprivation of civil rights brought under 42 U.S.C. § 1983, alleging that Skarzynski was deprived of property without due process of law. The gist of this claim is that the Department deprived Skarzynski of procedural due process by failing to provide him with a hearing following the seizure of his unemployment benefits. Skarzynski's second claim is also a § 1983 claim for procedural due process. This claim involves the family court's practice of entering orders relating to guardian ad litem fees on an ex parte basis. (As we will see, events that have occurred since the filing of the complaint have rendered this claim moot.) Finally, Skarzynski brings a state-law conversion claim against the Department and County, seeking $160.48 in damages for the improper withholding of guardian ad litem fees from his unemployment benefits.

Before me now are two motions. The first is Chief Judge Kremers's motion to dismiss the complaint for failure to state a claim against him. The second is plaintiff's motion for summary judgment on his procedural due process claim. He seeks a declaration stating that the Department may not make deductions from unemployment benefits without providing the beneficiary with a post-deprivation hearing. He also seeks an injunction requiring the Department to create an evidentiary hearing mechanism that includes a right to judicial review.

4

## II. DISCUSSION

A.   **Chief Judge Kremers's Motion to Dismiss**

Plaintiff named Chief Judge Kremers as a defendant in connection with his claim that the court's practice of issuing orders awarding guardian ad litem fees on an ex parte basis violates due process. It is not clear that this claim can properly be brought in federal court or that Chief Judge Kremers is a proper defendant. (Chief Judge Kremers did not personally sign any of the orders in plaintiff's paternity action, but he seems to have had some authority over the general procedures followed by the Milwaukee family courts.) However, these matters need not detain us because the claim is moot. As of January 17, 2011, the Family Division of the Milwaukee County Circuit Court ceased awarding guardian ad litem fees on an ex parte basis. The court's new procedure requires notice to the parties of the guardian ad litem's request and a chance for the parties to raise objections at a hearing. Thus, the court has voluntarily adopted the precise procedures plaintiff seeks to impose on it via this lawsuit. Plaintiff does not suggest that the court might revert to its old ways once plaintiff's claim is dismissed, and so plaintiff's requests for declaratory and injunctive relief regarding this matter are moot. See Fed'n of Adver. Indus. Representatives v. City of Chicago, 326 F.3d 924, 928-31 (7th Cir. 2003) (claim for prospective relief is moot when government voluntarily provides the relief requested). Plaintiff does not request damages in connection with his claim against Chief Judge Kremers, and so the claim in its entirety must be dismissed as moot.

In response to the Chief Judge's motion to dismiss, plaintiff acknowledges that his claim is moot, but he contends that the Chief Judge should be kept in this case because

5

one of the other defendants might try to use the court's former practice of awarding guardian ad litem fees on an ex parte basis as a defense. I am not sure how the presence of the Chief Judge in this case could affect the validity of any such defense or the scope of any relief awarded, but at this point in the case it is clear that no defendant is trying to use the court's former practice as a defense. Thus, whether or not the Chief Judge was ever a proper party to this case, it is clear that he is not now one. His motion to dismiss will be granted.

**B.     Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for summary judgment on his remaining procedural due process claim and seeks an injunction requiring the Department to provide child-support payors with due process when it makes deductions from unemployment benefits. The parties agree that child-support payors have a property interest in their unemployment benefits,[3] and plaintiff does not contend that the Department is required to provide any pre-deprivation process, and so the only question is how much post-deprivation process is required. Plaintiff contends that due process requires a prompt evidentiary hearing and an opportunity for judicial review.

The process the Department currently offers to child-support payors who have a complaint with the Department involves an administrative complaint mechanism.

---

[3]The Department suggests that although plaintiff has a property interest in his unemployment benefits, it was not the Department that caused the deprivation of this interest, since it was the KIDS system – maintained by the state – that made the deductions. However, it was the Department's entry of information into the system that caused the deprivation, and the money was distributed to Milwaukee County. The Department and the County are for all intents and purposes the same entity, and so the Department and the County are the entities that caused the deprivation and are the entities responsible for providing constitutionally sufficient process.

6

Apparently, this mechanism was created at the request of the State of Wisconsin's Department of Children and Families for the purpose of ensuring that the state complied with federal Social Security requirements. Pursuant to this mechanism, if someone has a complaint about the Department's actions, she may file an administrative complaint on a form available from the Department. (See Roulette Aff. Ex. 9.) Upon receipt of a complaint, the Department reviews the matter and issues a decision. The decision is usually made by an attorney who works with the Department or by the director of the Department.

What happens if a payor is not satisfied with the Department's decision on an administrative complaint is not entirely clear. It is clear that the Department does not provide an opportunity for an evidentiary hearing and does not think it is required to do so. However, I have been unable to identify the Department's position on whether any other process, including judicial review, is available. The Department has at times suggested that various forms of further review might be available, but it refuses to commit itself to any specific procedure. The Department's suggestions have included filing a motion with the family court concerning the Department's decision, filing a tort action against the Department, and initiating proceedings under Milwaukee County's administrative procedure act, Chapter 110 of the Milwaukee County Ordinances. The Chapter 110 suggestion would have satisfied plaintiff, since it provides a person aggrieved with an evidentiary hearing and a right to judicial review. I thus asked counsel for the Department at oral argument whether the Department would concede that Chapter 110 applied to decisions of the Department, but after consulting with his client counsel refused to do so.

The Department's reluctance to concede that Chapter 110 applies to its decisions stems from the fact that it does not think it is required as a matter of due process to provide complainants with an evidentiary hearing. The Department's position is that its administrative complaint mechanism is adequate to resolve the kinds of disputes that individuals are likely to have with the Department, and that therefore the benefits of establishing an evidentiary hearing mechanism would not justify the cost of doing so. I thus consider whether due process requires the Department to provide aggrieved parties with a post-deprivation evidentiary hearing.

To determine what procedural protections the Constitution requires in a particular case, I must weigh several factors:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Zinermon v. Burch, 494 U.S. 113, 127 (1990) (quoting Mathews v. Eldridge, 424 U.S. 319, 335(1976)). Consideration of these factors (the "Mathews factors") is essentially "a simple cost-benefit test" in which the judge "compar[es] the benefit of the procedural safeguard sought, which is a function of the value of the property interest at stake and the probability of erroneous deprivations if the safeguard is not provided, with the cost of the safeguard." Sutton v. City of Milwaukee, 672 F.2d 644, 645 (7th Cir. 1982).

The procedural safeguard plaintiff seeks is a prompt evidentiary hearing following the Department's denial of an administrative complaint concerning a deduction from a child-support payor's unemployment benefits. The first Mathews factor to consider is the

8

value of the property interest at stake. In Skarzynski's case, we are talking about only $160. In cases involving other payors, it is conceivable that the amount in question could be greater (or less), and plaintiff has made no effort to establish any sort of average amount that we could expect to be involved in a typical dispute between the Department and a payor. This makes it difficult to apply the Mathews test with accuracy. Nonetheless, even assuming that the value of the property interest at stake is significant, consideration of the remaining Mathews factors shows that the Department is not required to provide an evidentiary hearing.

The second factor is the probability of an erroneous deprivation if an evidentiary hearing is not provided. In quantifying this probability, the first thing to consider is whether the Department will need to resolve any disputed questions of fact in the course of a dispute between it and a child-support payor. This is because if there are no factual disputes to resolve then there is no reason to hold a hearing. See Dixon v. Love, 431 U.S. 105, 113-14 (1977); Codd v. Velger, 429 U.S. 624, 627-28 (1977); Woods v. McBride, 430 F.3d 813, 819 (2005); United States v. Villegas, 388 F.3d 317, 324 (2004); Centurion Reinsurance Co., Ltd. v. Singer, 810 F.2d 140, 144 (7th Cir. 1987); Barbian v. Panagis, 694 F.2d 476, 488 (7th Cir. 1982). In the present case, plaintiff has not pointed to any factual issues that might arise during a dispute with the Department. There is not much in the record that explains the functions of the Department, but from what the record contains it appears that the Department does little more than input information from court orders into the KIDS system. Thus, the only errors affecting a property interest that the Department might make are clerical – inputting erroneous information into KIDS or failing to update KIDS to reflect that a child-support payor no longer has a particular child-support

9

obligation. Plaintiff has not suggested that to identify or correct any of these errors a payor will need to introduce oral testimony at an evidentiary hearing; rather, it appears that a payor needs to do no more than inform the Department that she believes an error has been made and perhaps provide it with copies of the relevant court orders. Thus, it is hard for me to conceive of any set of circumstances under which an evidentiary hearing would be needed to prevent a deprivation of property.[4]

The third Mathews factor is the cost of the procedure, which in this case is limited to the expense of establishing and administering a hearing mechanism. Because in my analysis of the second factor I have concluded that plaintiff has not shown that an evidentiary hearing would ever be needed to prevent an erroneous deprivation of property, it follows that the costs of the procedure outweigh the benefits (since the procedure has no benefits), and that therefore due process does not require the Department to provide an evidentiary hearing.

The right to an evidentiary hearing was the major bone of contention between the parties in this case, but in my view this was something of a distraction from the real issue. It seems to me that if we focus on the actual facts of this case, what Skarzynski really wants is not a hearing but a mechanism for reviewing the Department's legal conclusions. As noted, Skarzynski thought that the Department's deduction of guardian ad litem fees from his unemployment insurance was "improper." Although plaintiff has yet to precisely explain his argument as to why the deduction was improper, he has said enough for me

---

[4]Perhaps an evidentiary hearing would be required if it was the Department's job to determine when plaintiff was "able" to reimburse the County for guardian ad litem fees, but no one has suggested that the Department was authorized to implement the family court order in this manner.

to know that his argument is that relevant state and federal statutes prohibit (or at least do not authorize) the government to make deductions from unemployment benefits for the purpose of reimbursing a county for guardian ad litem fees. As noted above, plaintiff has not told us what the Department said when his attorney "contacted" the Department about this issue, but presumably the Department thinks that plaintiff's interpretation of the relevant statutes is wrong. The meaning of the relevant statutes is a pure legal question, and thus an evidentiary hearing would be pointless. What plaintiff wants is review of the Department's interpretation of the statutes, and so the procedure he wants is judicial review, not an evidentiary hearing.

The Department does not contend that its legal conclusions are immune from judicial review. However, because the parties' focus has been on the right to an evidentiary hearing, the Department has not taken a position on what form judicial review should take. As noted, Chapter 110 – Milwaukee's administrative procedure act – provides a mechanism for obtaining judicial review of a decision by a County agency. See Milwaukee County Ordinance § 110.01(a). Although the Department will not stipulate that Chapter 110 applies to its decisions, this does not mean that it doesn't, and so plaintiff is advised to try and invoke Chapter 110 in the event he has further disputes with the Department. But even if Chapter 110 does not apply to the Department's decisions, judicial review would still be available by way of common law certiorari. In Wisconsin, "[c]ertiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality, an administrative agency, or an inferior tribunal." Ottman v. Town of Primrose, 2011 WI 18, ¶ 34. Although most certiorari review is now performed pursuant to statutory provisions giving a party a right to certiorari review (such as Chapter 110),

"[c]ommon law certiorari is available whenever there is no express statutory method of review." Id. ¶ 35. Further, one of the very purposes of common law certiorari is "to review legal questions involved in an administrative agency's decision." Franklin v. Housing Auth. of the City of Milwaukee, 155 Wis. 2d 419, 242 (Ct. App. 1990). Thus, the kind of process Skarzynski seeks is readily available under Wisconsin law, either pursuant to Chapter 110 or common law certiorari.[5] So there is no reason to issue an injunction creating a separate procedure for judicial review.[6]

At oral argument, plaintiff suggested that due process requires the Department to provide individuals with explicit notice of the procedures they must follow if they wish to obtain review of an adverse decision. Plaintiff then suggested that the Department's failure to print instructions for obtaining such review on its decisions was itself a due process violation. However, due process does not require "individualized notice of state-law remedies which . . . are established by published, generally available state statutes and case law." City of West Covina v. Perkins, 525 U.S. 234, 241 (1999). The mechanisms

---

[5] Another option is to do what Skarzynski has done in the present case – bring a state-law tort action against the Department and the County. Although this is probably the most cumbersome option, it does provide a vehicle for resolving questions of law, and the precedential and/or preclusive value of judgments should minimize the need for plaintiffs to bring multiple suits over the same legal issue.

[6] Plaintiff asks that I declare that Chapter 110 applies to decisions of the Department. However, for federal due process purposes, it does not matter whether the process is provided by Chapter 110 or common law certiorari. What matters is that the process exists. Thus, I do not think the question of whether, as a matter of state or municipal law, Chapter 110 applies to the Department is properly before me. In any event, the parties have not briefed this question, and so even if I had the power to decide it I would hesitate to do so on the present record. Still, I note that plaintiff might be able to bring a common law certiorari petition or some other state-court action for the purpose of obtaining a judicial determination that Chapter 110 applies to the Department's decisions.

for obtaining judicial review discussed above are all established by published laws and cases, and so due process does not require the Department to provide separate, individualized notice. There may be some ambiguity concerning whether the right mechanism is Chapter 110 or common law certiorari, but the fact that the laws and the cases require some interpretation is not grounds for finding a due process violation.

### III. CONCLUSION

For the reasons explained above, plaintiff's due process claim against Chief Judge Kremers must be dismissed as moot, and his due process claim against the Department must be dismissed on the merits.[7] This leaves plaintiff's state-law claim for conversion of the $160, over which I have supplemental jurisdiction. 28 U.S.C. § 1337. I will schedule a status conference for the purpose of scheduling further proceedings on this claim.

**THEREFORE, IT IS ORDERED** that Chief Judge Kremers's motion to dismiss is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment is **DENIED** and that summary judgment is granted to defendants on plaintiff's procedural due process claim.

**FINALLY, IT IS ORDERED** that a telephonic status conference will be held on **July 22, 2011 at 10:30 a.m.** The court will initiate the call.

---

[7]Although the County defendants did not file their own motion for summary judgment on the procedural due process claim, they requested entry of summary judgment in their favor in their brief. (Br. in Opp. at 3.) In his reply, plaintiff did not say that he needed additional time for discovery or argue that the defendants' failure to file their own motion should prevent entry of summary judgment in their favor. Thus, pursuant to Federal Rule of Civil Procedure 56(f)(1), I will grant summary judgment to the County defendants on this claim.

Dated at Milwaukee, Wisconsin, this 30th day of June, 2011.

/s_____
LYNN ADELMAN
District Judge